IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF SOUTH CAROLINA CHARLESTON
DIVISION Civil Action No.: 2:18-cv-00735-DCN

| MARK FULTZ | |
|---|---|
| Plaintiff, | **PLAINTIFF'S MEMORANDUM AND CERTIFICATION IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS.** |
| v. | |
| FINCHER,PATRICK,WEIR, LLC, | |
| Defendants. | |

### NATURE OF THE CASE.

Fultz has brought this action to end segregation against the disabled at the Defendants' shopping mall, pursuant to the Americans With Disabilities Act. Defendant defends not on the merits but on jurisdictional grounds.

### FACTS.

Plaintiff, Fultz is a disabled man who resides in Margate Florida. In 2016 Fultz became disabled due to a stroke. As a result, he uses a wheelchair and a cane. He is a licensed contractor. ECF No. 11 Ex.A. para 2 and 4.

Fultz has been visiting Charleston, South Carolina since, approximately 2000. He visits family including his aunt who resides in Mt. Pleasant and his nephew Mike Woods who resides on River Landing Road, Charleston. On occasion he stays with them. ECF No. 11 Ex A. para 5-8.

Fultz also stays in hotels including the Comfort Inn on 144 Bee St. Charleston as well as the Holiday Inn on 301 Savannah Hwy, Charleston. Both hotels are near the Defendants' shopping mall, the

Comfort Inn is within 10 minute drive from the Defendant. ECF No.11 Ex A.para 9-11.

He visits Charleston two or three times a year, both to visit his loved ones and to enjoy Charleston which he adores. ECF No. 11 Ex A. para 5-6.

Fultz has been a patron of the Defendants shopping mall on numerous occasions. The last time he was a patron at the mall at 630 Skyland Drive on November 16, 2017.ECF No.11 EX A. para 12-17.

His ability to enjoy the shopping mall was impaired because of the lack of proper parking for the disabled and lack of proper accessible routes. The route provided for the disabled is blocked by merchandise. ECF No.11 EX A. para 12-17.

He shops at Bio Lo and enjoys the bar in Mueller's' Pub, Being a German American he enjoys the atmosphere of the Mueller's sports bar, which serves German food such as Bratwurst, Schnitzel and Spazie. ECF No.11 para 12. Fultz intends to return to the shopping mall, as a patron and tester. He intends to return at least 2 to 3 times a year. He indicates that he is appalled at the lack of access and poor workmanship. At this stage, because of the dangerous nature because of the lack of access cannot return, independently, without a danger to himself. Most definitely when the shopping malls comply with the ADA he will return as a patron and tester.

## INTRODUCTION.

The Defendants'' position of narrow access to the Court was rejected by the 4th Circuit. <u>Nanni v. Aberdeen Marketplace</u>, 878

F. 3d.447 (4th Cir. 2017) The opinion joined in by Judge Traxler explained the purpose of active enforcement of the ADA.

> Moreover, under our system, all citizens are obliged to obey the law and to aid law enforcement efforts. In various situations, citizens are required by law to report violators to the proper authorities. See,e.g., 18 U.S.C. § 4 (requiring citizens to report felony offenses to judges and other authorities). As the Supreme Court acknowledged several years ago, the "enforcement [of civil rights laws] would prove difficult" and our country will be obliged "to rely in part upon private litigation as a means of securing broad compliance." See Newman v. Piggie Park Enters., 390 U.S. 400, 401, (1968). That very principle is also embodied in the ADA. See Dudley, 333 F.3d at 306-07 (discussing importance of private litigation in achieving broad compliance with ADA). In the community of those citizens who are wheelchair bound, the identification of public accommodation facilities that flout the ADA is obviously an important activity. Naani at 47.

### THE ADA'S FUNDAMENTAL EFFECT ON ACCESS TO PUBLIC ACCOMMODATIONS. AND THE NEED FOR PRIVATE ENFORCEMENT.

The ADA mandates fundamental changes in the historical treatment of persons with disabilities and specifically requires that public accommodations include a failure to remove architectural barriers that are structural in nature in existing facilities. . .where such removal is readily achievable, 42 U.S.C. § 12182(b)(c). Congress enacted the law because of its deep concern with the "alarming degree of non-participation in public life by persons with disabilities. It found a "sobering picture of an isolated and secluded population" in which the "large majority" of persons with disabilities do not go to

public accommodations. H.R. Rep. No. 101-485(II), 34 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 316. Predominate among the causes of this social isolation were "architectural barriers" to access. Id. at 385.

**STANDARD FOR A 12(b)(1) motion.**

The 4th Circuit stated the standard for a 12(b)(1) motion in Richmond, Fredericksburg and Potomac R. Co. v. U.S. ,945 F.2d765,769 (4th Cir. 1991)

> When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.1982). In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id.; Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Trentacosta, supra, 813 F.2d at 1559 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, ... The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Trentacosta, supra, 813 F.2d at 1558.

**STANDARD FOR A 12(b)(6)motion.**

In a Rule 12(b)(6) context, the reviewing court must determine whether the complaint alleges sufficient facts "to raise a right to relief above the speculative level" and "to state a claim to

relief that is plausible on its face. "Bell Atl. Corp.v.Twombly, 550 U.S. 544, 555, 570, (2007).

This directive ordinarily limits a court's review to the "well-pled facts in the complaint[, which it must view] in the light most favorable to the plaintiff." Brockington v. Boykins, 637 F.3d 503, 505 (4th Cir.2011) .While no absolute bar exists, a motion to dismiss under Rule 12(b6) does not typically resolve the applicability of defenses to a well-pled claim. See Tobey v. Jones, 706 F. 3d 379,387 (4th Cir.2013) (stating a motion to dismiss under Rule 12(b)(6) "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses").

## LEGAL ARGUMENT I

**DEFENDANTS MOTION PURSUANT TO FRCiv 12b1 SHOULD BE DENIED BECAUSE FULTZ HAS STANDING TO PROSECUTE THIS MATTER UNDER THE PRINCIPLES OF Nanni v. Aberdeen Marketplace , 878 F. 3d.447 (4th Cir 2017).**

In that the Defendant has proceeded under FRCiv 12(1) Fultz has supplemented the record by certification to satisfy the principles of Nanni v. Aberdeen Marketplace, 878 F. 3d 447, 455-457.(4th Cir.2018). Specially, they are as follows. Plaintiff is disabled. Second, he sustained discrimination and an injury by the physical barriers  to  accesss. Third, he has asserted a plausible intent to return as a patron and tester. Fultz certification. ECF No 11.   Consequently, Defendants' 12b1 motion should be denied because the   material jurisdictional facts are  in dispute and is not entitled to prevail as a matter of law.

Trentacosta, supra, 813 F.2d at 1558.

### LEGAL ARGUMENT II.

**THE PLAINTIFF IN HIS COMPLAINT SATISFIES THE PLEADING REQUIREMENTS FOR STANDING AS STATED IN. Nanni v. Aberdeen Marketplace, 878 F. 3d.447 (4th Cir. 2017).**

In reversing the too narrow view of the District Court regarding standing the 4th Circuit in an ADA matter established the

following principles in a 12b6 motion. . Nanni v. Aberdeen

Marketplace, 878 F.3d.447,455-457.(4th Cir. 2017).

> First of all, we reject the district court's determination in its Opinion that the Complaint does not sufficiently allege past injuries that are concrete and particularized, as well as actual or imminent. To satisfy that standard, a plaintiff may demonstrate an "actual" "invasion of a legally protected interest" that "affect[s] the **\*455** plaintiff in a personal and individual way." a past injury is sufficiently pleaded for purposes of an ADA claim where a disabled individual who requires a wheelchair for mobility alleges that he has personally encountered noncompliant architectural barriers and describes how those barriers caused him harm.

3. Fultz pleads: :" On November 16, 2017

Fultz was a guest at Defendant FINCHER, PATRICK, WEIR, LLC.

4. His ability to use the services of the mall was impaired

because of lack of proper access to him and the disabled as a whole.

5. Specially,the parking does not provide proper parking spaces

nor accessible routes for the disabled. In that Fultz is a

wheelchair user it is more difficult for him to travel from point

A to B, therefore he has been discriminated against under the ADA.

The plaintiff alleged past injuries are concrete and particularized, as well as actual or imminent. Past injury was assert his ability was impaired because of lack of proper access. Specially, the parking does not provide proper parking nor accessible routes "He further alleged that being a wheelchair user it is difficult to travel A to B. ECF No.1 Ex A.

Nanni provides

> Architectural barriers, such as those identified here, result in exclusion, segregation, and other differential treatment of persons with disabilities—precisely the types of systemic discrimination the ADA seeks to erase. *See* 42 U.S.C. § 12182(a). By alleging that Nanni visited the Marketplace and personally encountered architectural barriers to access, the Complaint pleads past injuries that are concrete, particularized, and actual. Indeed, there is nothing conjectural or hypothetical about the injuries Nanni suffered during his visits to the Marketplace."

Fultz sustained similar barriers as Nanni, parking and routes.

> Again turning to the Nanni decision.

> Importantly, the *Daniels* principle—that when an ADA plaintiff has alleged a past injury at a particular location, his plausible intentions to thereafter return to that location are sufficient to demonstrate the likelihood of future injury—is entirely consistent with the decisions of our fellow courts of appeals. *See,e.g., Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188(2d Cir. 2013); *Gaylor v. Hamilton Crossing CMBS*, 582 Fed.Appx. 576, 580 (6th Cir. 2014); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013); **\*456** *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000); *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008); *Tandy v. Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004);

Fulz is a " Plaintiff is a frequent traveler to Charleston South,

Carolina because his family resides in the area. "He further alleges

The plaintiff intends to be a frequent patron of defendants, when

it complies with the ADA.   He will also return as a tester.

Certainly, his intention is plausible since he is a frequent visitor to

Charleston and he asserts he will be a frequent patron, ECF 1 Exh A.

> In Daniels v. Arcade, L.P., 477 Fed. Appx. 125, 128
> (4th Cir. 2012)   the Court found that allegations by
> an ADA plaintiff that he "visited the [property] and
> encountered [various barriers] himself" adequately
> pled an "injury [that] is 'actual' or 'concrete',
> rather than theoretical." Id. at 129. Further, "the
> injury is 'particularized' Page 7 of 14 8 because the
> injury affected [the ADA plaintiff] 'in a personal and
> individual way.'" Similarly here, Plaintiff pled that
> he visited Defendant's property and personally
> encountered specific barriers. Regarding the intent to
> return, the Fourth Circuit in Daniels stated as
> follows: Although we agree with the district court
> that Daniels was required to state a plausible
> allegation that there is a likelihood that he will
> suffer future harm, we disagree with the district
> court's conclusion that Daniels' allegations are
> insufficient. Daniels alleged that he "intends to
> continue to visit the [Market] in the future for his
> shopping needs." We must accept this allegation as
> true for purposes of the motion to dismiss, and we
> deem the allegation plausible because Daniels resides
> in relatively close proximity to the Market. Id. At
> 130. Further, the Court rejected the argument that a
> plaintiff need to provide "a more specific time at
> which he intends to visit the [property] in the
> future," noting that there was "no precedent in this
> Circuit that requires the degree of specificity to
> survive a motion to In the instant matter dismiss."

The Defendant places great weight that Fultz resides in Florida.

This defense has been rejected in this Court when a plaintiff

has a history of traveling to the area. Ingram v. Maryland Fried

Judge Hendricks wrote:

> " Defendant argues that Plaintiff's allegations of
> proximity are similar to those made in another case in
> this district, in which the court dismissed the
> plaintiff's ADA claims for lack of standing. In *Harty
> v. Burlington Coat Factory of S.C., LLC*, No. CIV.A.
> 3:11-1138-MBS, 2012 WL 264688, at *4 (D.S.C. Jan. 30,
> 2012), the plaintiff, a Florida resident, brought an
> ADA action against the defendant's store located
> "hundreds of miles away" in Columbia, South Carolina.
> Noting this distance, the court found that plaintiff's
> allegation that he "visits South Carolina often on
> business and plans to continue to visit South Carolina
> in the future" did not establish a plausible reason to
> infer that he is likely to return to the store in the
> near future. The Court noted that the plaintiff did
> not state that Page 9 he frequently visits Columbia,
> indicating that the court would have altered its
> finding if the plaintiff had alleged that he
> frequently visits the specific town where the store is
> located. Here, Plaintiff has alleged that he regularly
> visits Myrtle Beach, the town in South Carolina where
> Defendant's restaurant is located. Thus, Plaintiff has
> made a key allegation expressly found wanting in
> *Harty*, rendering the case inapplicable here. The Court
> finds that Plaintiff's distance from Defendant's
> restaurant does not preclude the presence of standing
> given the allegations in his Complaint.

### LEGAL ARGUMENT III.

### TO ESTABLISH STANDING IN AN INJUNCTIVE RELIEF CASE THE PLAINTIFF DID NOT HAVE TO HAVE A SPECIFIC DATE TO RETURN; BUT ONLY A REASONABLE LIKELIHOOD OF FUTURE INJURY.

It is the role of the Judicial Branch to provide relief to

individuals who suffered or will suffer actual harm. Lewis v.

Casen, 518 U.S. 343, 349 (1996). Congress intended to extend to

the ADA the full extent of Article III standing, Steger v. Franco,

Inc., 228 F.3d 889 (8th Cir. 2000); Innovative Health Systems,

Inc. v. White Plains, 117 F.3d 33, 48 (2nd Cir. 1997).

Expansive standing rules for civil right is well established in

Graham v. Brotherhood, 338 U.S. 232(1949) a case authorized by
conservative Justice Robert Jackson, the Court held that a
district court had jurisdiction to enforce by injunction the
rights for non-discrimination represented by unions.  See also
Burrows v. Jackson, 346 U.S. 249 (1953) (In a racially
restrictive covenant case a white woman could assert the
constitutional rights of an African-American; Pierce v. Society
of Sisters, 268 U.S. 510 (1925) a Roman Catholic school had
standing to enjoin enforcement of a state statute that required
students to attend public schools, notwithstanding, that no
parent or guardian had filed suit; and NAACP v. Alabama,

357 U.S. 449 (1958), organization had standing to resist a

requirement that it divulge its members while its members

remained anonymous.

A principled approach to standing was articulated by Chief

Justice Rehnquist.  The requirement of standing focuses on the

party seeking to get his complaint before a federal court and

not on the issues he wishes to have adjudicated.  Valley Forge

Christian College v. Americans United for Separation of Church

and State, Inc., 454 U.S. 464, 487 (1982).

The  Court held in Stevens v. Premier, 215 F.3d 1237 (11th Cir.

2000) that a proposed amended complaint would have satisfied Lujan

v. Defenders of Wildlife, 504 U.S. 555 in regard to standing,

notwithstanding that the Plaintiff was going to return to the ship

only if it was altered to comply with the ADA In Shotz v. Cates,

256 F.3d 1077 (11th Cir. 2001) the Court held that to establish

standing the Plaintiffs must allege that they intend to return to the site in the future. The <u>Cates</u> decision did not require to state a specific date but rather a desire to return.

<div align="center">LEGAL ARGUMENT IV.</div>

> **THE CIRCUIT COURTS THAT HAVE CONSIDERED PLAINTIFFS STANDING TO ENFORCE TITLE III HAVE HELD THAT AN ACTION IS SUFFICIENT IF THE PLAINTIFF MERELY ALLEGES THAT HE INTENDS TO USE THE PUBLIC ACCOMMODATIONS AGAIN. THE CIRCUITS HAVE NOT REQUIRED THE PLAINTIFFS TO SPECIFY A SPECIFIC TIME FRAME IN WHICH THEY INTEND TO USE THE ACCOMMODATION.**

It is respectfully submitted that Defendant can take no comfort in the opinion of the various Circuits that have explored the issues of ADA standing.

In <u>Tandy v. City of Wichita</u>, 380 F.3d 1277 (10th Cir. 2004) the 10th Circuit held that one Plaintiff had standing to request injunctive relief, notwithstanding the Plaintiff only used the bus system a couple of times a year and that there would only be a 20% chance of an ADA violation. Because of the closeness of the case at bar, it would be helpful to quote the <u>Tandy</u> holding:

> Appellant Allen has standing to seek prospective relief. Allen has established that she is under a real and immediate threat of repeated injury. Allen has used the fixed-route bus service in Wichita for many years and has averted an intent to use Wichita Transit's bus system for personal transportation several times per year in the future. In the past, her travels were delayed because of a lift malfunction. The record shows that historically, a frequent Wichita Transit fixed-route bus rider experienced lift malfunctions twenty to thirty percent

of the time. Under these circumstances, Allen has established that she is under a realistic threat of experiencing a lift malfunction *fn11 during at least twenty percent of her several yearly attempts to use Wichita Transit's buses. This suffices to establish an injury in fact.

Moreover, Allen's averred intent to use Wichita Transit's buses "several times per year" is not a mere "someday intention." Speculative, "someday" intentions do not support standing to seek prospective relief. See Defenders of Wildlife, 504 U.S. at 564; Animal Legal Def. Fund, Inc. v. Espy, 23 F.3d 496, 500-01 (D.C. Cir. 1994) (holding that intent to undertake research at some unidentified future time is not sufficiently imminent to support standing to seek an injunction). Allen's testimony of an intent to use buses "several times per year" suggests a concrete, present plan to use Wichita Transit's fixed-route buses several times each year, including the year in which she made that statement

In Pickern v. Holiday Quality Foods, 293 F.3d 1133 (9th Cir. 2002) the 9th Circuit held a disabled man had standing when he testified that he liked a particular food store chain and that he would shop at the store if accessible. "This is sufficient to establish actual or imminent harm for purposes of standing." Pickern at. See also Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075 (9th Cir. 2004); Dudley v. Hannaford Bros. Co., 333 F.3d 299 (1st Cir. 2003) (allows standing with the observation that Title III suits because of the remedial purposes should resolve doubts about such questions in favor of the disabled; and Steger v. Franco, 228 F.3d 889 (8th Cir. 2000).

As a review of these Circuits reveal the Courts that have rendered opinions are unanimous in holding that a disabled plaintiff

has standing for injunctive relief if he asserts that he has a future intent to utilize a public accommodation after it complies with the ADA.

## THE FEDERAL COURTS ALLOW NOTICE PLEADINGS.

The Plaintiff has alleged a cause of action under the Americans With Disabilities Act. The Defendant must be under the impression that the federal courts are a traditional code-pleading jurisdiction, such as, the state court of California or

Pennsylvania. In comparison, the Federal Rules have adopted the concept of notice pleading. The Federal Rules only require a short and plain statement of the claim showing the pleader is entitled to relief. F. R. Civ. P. 8(a)(2). Indeed, a complaint is not even required to set forth facts supporting each element of every claim in the complaint. Sanjuan v. American Bd. of Psychiatry and Neurology, 40 F.3d 247 (7th Cir. 1994199 (5th Cir. 1948). Indeed, such a simple statement as "I was turned down for a job because of my race is all a complaint has to say." Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998). A complaint must "a sufficient factual matter … to "state a claim to relief that is plausible on its face. "Ashcroft v. Igbal, 129 S. Ct. 1937, 1949.

Obviously, the Federal Courts have other effective procedural safeguards to protect litigants in the determination of the legal

suffering of a claim or defense such as discovery and pretrial conferences. These include discovery procedures, pretrial conferences and mediation; Summary. <u>Laughlin, Inc. v. Chrysler Corp</u>., 242 F.2d 208 (1957). Applying the above standards it is clear that Defendant's motion has no merit. Fultz has alleged a violation of the ADA in a plain statement. F.R.Civ.P. 8(a). The Defendant by Plaintiffs' complaint is well aware that Fultz has alleged a violation of the ADA. Consequently, the Defendant is in a position of being able to defend the allegation. Defendants argument in that- plaintiff has not been specific enough in regard to the name of his relatives and their address was rejected in <u>Access 4-All v. Trump Inter Hotel and Tower,</u> 458 F. Supp.2d 160, 168 (S. D. N.Y. 2006)

> Plaintiffs have shown a genuine question of material fact as to whether Spalluto has a plausible intention or desire to return to Trump Tower. Spalluto, who once lived in New Jersey; states that he has visited New York City over 15 times in the last three years and, at the time of his affidavit, had three more trips planned to New York…. He maintains personal and family connections in Northern New Jersey and New York City and conducts business in New York City. He had visited Trump Tower on trips prior to his stay at the hotel there on June 22, 2004. (First Spalluto Aff. ¶ 4) He also states a definite intention to return to Trump Tower, to visit the shops and to eat in its restaurants, … He also admits, however, that one reason he would like to return is to verify that Trump Tower is in compliance with the ADA, and that, if it is, he would like to stay again at the hotel. *(Id.)*
> Defendant argues that because Spalluto has failed to provide the exact addresses of his family or their proximity to Trump Tower, his intentions are

speculative. This argument fails. The statements in Spalluto's affidavits are sufficient to support a factfinder's determination that he has a "plausible intention" to return to Trump Tower and stay at the hotel. *See Disabled in Action,*2003 WL 1751785, at *7-8. Thus, there is a material issue of fact regarding this element of Spalluto's standing, and summary judgment is inappropriate. *See id.* at *9. Whether or not Spalluto in fact will return to Trump Tower and face discrimination is for the factfinder, not the Court on a summary judgment motion, to decide. Similarly, it will be for the factfinder to determine the veracity of Spalluto's claims.

### LEGAL ARGUMENT V.

**FULTZ SEEKS LEAVE TO AMEND HIS COMPLAINT TO FILE A MORE SPECIFIC COMPLAINT IF THE COURT IF THE COURT VIEWS THE COMPLAINT IS NOT SPECIFIC ENOUGH.**

In that Plaintiff complaint was filed in State Court, which has more liberal pleading requirements than federal Court, it is respectfully, submitted that Plaintiff should be granted leave to file an amended complaint if the Court, holds that the complaint is not specific enough. Stroud v. Riddle, 194 S.E.2d 235, 260 S.C. 99 (S.C., 1973) and Goode v. Cent Va. Legal Aid Soc. Inc. 807 F. 3d 619,523-24 (4th Cir. 2015)

### LEGAL ARGUMENT VI.

### TESTER SUITS ARE RECOGNIZED IN ADA SUITS.

It has long been held that testers have standing to sue in civil rights cases. Evers v. Dwyer 358 U.S. 202 (1959) and Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982).

ADA suits testers have been recognized. <u>Tandy v. City of</u>
<u>Wichita,</u> 380 F.3d 1277, 1286-88 (10th Cir. 2004) (holding that
disabled passenger whose sole purpose in riding city buses was
to test for ADA compliance had standing to seek prospective
injunctive relief). In so holding, the court relied on
"Congress' intent to confer standing to the outer limits of
Article III." Id. at 1287. The court noted that, as a tester,
the plaintiff would, in fact, be riding the buses. The critical
analysis set forth by the Tenth Circuit is as follows:

> The <u>Havens Realty</u> Court emphasized FHA §
> 804(d)'s use of the phrase "any person" in
> concluding that this statutory language created
> legal rights, the invasion of which constitutes
> the actual or threatened injury required by
> Article III. 455 U.S. at 373. The language of
> Title II of the ADA parallels in all important
> respects the language of FHA § 804(d). Title II
> of the ADA states that " no qualified individual
> with a disability shall, by reason of such
> disability, be excluded from participation in
> ... the services, programs, or activities of a
> public entity, or be subjected to
> discrimination by any such entity." 42 U.S.C. §
> 12132 (emphasis added). The plain language of
> Title II evinces Congress' intent to confer
> upon a "qualified individual with a disability"
> a legal right not to be excluded from
> participation in the services of a public
> entity by reason of her or his disability.
> Title II's words "no" and "shall" function like
> § 804(d)'s phrase "any person" because, read in
> context, these words clearly proscribe
> discrimination against any person who is a
> "qualified individual with a disability."

The U.S. Court of Appeals for the Eleventh is in accord
holding that people with disabilities who have no interest as

patrons still have standing as testers. Houston v. Marad

Supermarkets 733 F. 3d 1323 (11th Cir, 2015). Betancourt v. Ingram

Park Mall, L.P., 235 F. Supp. 2d 587, 604 (W.D.Tex.2010)

and Gilkerson v. The Chasewood Bank, 1 F.Supp 3d 570 (S.D.Texas 2014.

**LEGAL ARGUMENT VII.**

**CONGRESS HAS RECOGNIZED THE ROLE OF PRIVATE
ATTORNEY GENERALS IN ENFORCING CIVIL RIGHTS
AND A NARROW INTERPREATION OF STANDING WOULD
RUN COUNTER TO CONGRESSIONAL INTENT.**

"Most ADA suits are brought by a small number of private

plaintiffs who view themselves as *champions of the disabled*."

Ingram Park Mall, 735 F. Supp. 2d at 596 (quoting Molski v.

Evergreen Dynasty Corp., 500 F.3d 1047, 1062 (9th Cir. 2007) D'Lil
v. Best Western Encina Lodge & Suites, 538 F.3d 1031, 1040 (9th

Cir. 2008) (same). See also Hensley v. Eckerhart, 461 U.S. 424,

445, (1983) ("All of these civil rights laws depend heavily

upon private enforcement, and fee awards have proved an essential

remedy if private citizens are to have a meaningful opportunity to

vindicate the important Congressional policies which these laws

contain."). Parr v. L & L Drive-Inn Property, 96 F. Supp. 2d 1065,

1082 (D. Hawaii 2000).

In Ingram v. Park Mall, 735 F. Supp. 2d at 595, the court

noted that a significant reason for according the broadest
possible interpretation of standing to Title III ADA litigants is

that they do so as "private attorneys general". Doran v. 7-Eleven

Inc., 524 F.3d 1034, 1041 (9th Cir. 2008)(holding that because

private enforcement suits are the primary method of obtaining ADA compliance, the broad view of constitutional standing is warranted). The remedies under Title III of the ADA are the same as those under Title II of the Civil Rights Act of 1964, 42 U.S.C. Section 2000, for which there is only injunctive relief. Frame v. City of Arlington, 575 F.3d 432, 438 n.5 (5th Cir. 2009). In the latter context, the Supreme Court has held that lawsuits by private litigants are "private in form only". Guardians Ass'n v. Civil Service Comm'n, 463 U.S. 582, (1983). "When a plaintiff brings an action under that Title, he cannot recover damages. If he obtains an injunction, he does so not for himself alone but also as a 'private attorney general', vindicating a policy that Congress considered of the highest priority." Id., citing Newman v. Piggie Park Enterprises, 390 U.S. 400, 401- 02, (1968). It is fair to assume that Congress had the same understanding when it enacted Title III of the ADA. Ingram Park Mall, 735 F. Supp. 2d at 596, quoting Dudley v. Hannaford Bros. Co., 333 F.3d 299, 307 (1st Cir. 2003).

Although the ADA authorizes enforcement by the Attorney General, the latter has limited resources, and thus "private suits by necessity represent the *main tool* for ensuring compliance with Congresses' intent in passing the ADA. Ingram Park Mall, at 735 F.Supp. 2d at 596. The Department of Justice supports this position. Because the Department "cannot investigate every place of public.

The broad Congressional mandate is a compelling reason to recognize tester standing for Title III ADA cases.

### LEGAL ARGUMENT VIII.

**IF THE COURT HOLDS IT DOES NOT HAVE STANDING, THEN IT SHOULD NOT BE WITH PREJUDICE. <u>STEEL CO. V.CITIZENS FOR A BETTER ENV'T,523 U.S. 83, 94 (1998)</u>.**

If this Court does not have standing to prosecute this case and, therefore, the Court does not have standing, it should not be with prejudice and remand the case back to the state Court. S. Walk At <u>Broadlands Homeowners Ass'n, Inc. v. Openbend at Broadlands LLC</u>.713 F.3d 175 (4th Cir. 2013.) Federal Courts are Courts of limited Jurisdiction, while the Circuit Court of South Carolina is of general jurisdiction. <u>Marbury v. Madison 5 US 1</u> (Cranch)137(1803. South Carolina Constitution Article V Section 11.

### LEGAL ARGUMENT IX.

**NORKUNAS v. PARK ROAD SHOPPING CENTE777F. Supp.2d 998(W.D.NC.2011 WHICH DEFEWNDANT BASES ITS OPPOSITION IS INMATERIIT.**

The opposition relies heavily on the North Carolina case of <u>Norkunas v. Park Road Shopping Center</u>, 777 F. Supp.2d 998(w. D. NC.2011 is misplaced. First, plaintiff in Park Road had no ties or connection to the mall nor to the area of North Carolina which was subject of the suit. Fultz had a long history in Charleston and has been a patron on numerous occasion of the shopping mall.

In addition the North Carolina Courts philosophy has been rejected in regard to standing and tester suits <u>Nanni v. Aberdeen Marketplace,</u> <u>878 F. 3d.447 (4th Cir. 2017.</u>

Respectfully Submitted,

<div style="margin-left:4em">

s/Anthony Brady

_____

Plaintiff/Attorney for Plaintiff
Anthony J. Brady Jr.
Law Offices of Anthony J Brady Jr.
1670-9 Springdale Drive
PMB 159
Camden , South Carolina 29020
561-603-8387
Email: ladbrady@gmail.com
Attorney ID.07264ab

</div>

## CERTIFICATE OF SERVICE.

The undersigned hereby certifies that a true and correct copy of the Memorandum in opposition to Defendants motion to dismiss was filed electronically as listed by U.S. Mail, First Class, Postage Paid and all emailed to all known counsel of record, as follows: PRITCHARD LAW GROUP, LLC Edward K. Pritchard, III Edward K. Pritchard, III, Esq. No. 4790 129 Broad Street (29401) Post Office Box 630 Charleston, South Carolina 29402 epritchard@pritchardlawgroup.com Attorneys for Defendant, Fincher, Patrick, Wier.

s/Anthony Brady

_____

Plaintiff/Attorney for Plaintiff
Anthony J. Brady Jr.
Law Offices of Anthony J Brady Jr.
1670-9 Springdale Drive
PMB 159
Camden , South Carolina 29020
561-603-8387
Email: ladbrady@gmail.com
Attorney ID.07264ab